UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**CARESSIA COMBS**
    Plaintiff

**v.**                                                                                                     **No. 5:07CV-00171-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Craig Housman. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 11, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on February 10, 2006, by administrative law judge (ALJ) Randolph Schum. In support of his decision denying Title II and Title XVI benefits, Judge Schum entered the following numbered findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's affective disorder and anxiety disorder are "severe" impairments, based upon the requirements in the Regulations (20 CFR §§ 404.1520 and 416.920).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant retains the residual functional capacity to perform work on a sustained basis at all exertional levels, as the medical evidence does not indicate a physical impairment or combination of physical impairments that would limit her exertional capacity. However, given her "severe" mental impairment, the claimant is "moderately" limited in her ability to set realistic goals and make independent plans, carry out detailed instructions, and relate to the general public. She can understand and remember simple instructions and procedures, sustain reasonable concentration, effort, and pace for simple tasks, and interact with supervisors and peers for task completion.

7. The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has a "high school education and above" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. Considering the types of work that the claimant is still functionally capable of performing in combination with the claimant's age, education and work experience, she could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy. Examples of such jobs include work as clerical positions such as file clerk (DOT 206.362-010 with 2,800 jobs in the State of Kentucky and 355,000 in the national economy) and bookkeeping positions (DOT 209.567-014 with 2,800 jobs in the state of Kentucky and 335,000 in the national economy).

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

13. The claimant has no exertional limitations (20 CFR §§ 404.1545 and 416.945).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four"

jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

The plaintiff is a "younger" individual who was born on January 5, 1967. She claims that she is incapacitated by her mood disorder. On October 10, 2005, the plaintiff's treating psychiatrist, Ronald Kelley, completed the Psychiatric Review Technique form in a manner indicating that her affective disorder meets the diagnostic and severity criteria of § 12.04 of Appendix 1 of the regulation, the so-called Listing of impairments (AR, pp. 294-305).

The plaintiff's primary contention upon judicial review is that the ALJ was required to give controlling weight to Dr. Kelley's medical opinion. The rules for weighing medical opinions are codified at 20 C.F.R. §§ 404.1527 and 416.927. However, this case presents the following threshold issues:

1. "[W]hether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart ... is reserved to the Commissioner" and is entitled to no "special significance."  20 C.F.R.  § 404.1527(e)(2) and (3).  Therefore, as contemplated by the regulations, Dr. Kelley's opinion is more akin to a legal conclusion of disability than a medical opinion (proper) and, hence, is not entitled to controlling weight.

2. To be disabling, an impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. §§ 404.1509.  Typically, a situational impairment does not satisfy the duration requirement.  The ALJ found that the evidence shows that the severity of the plaintiff's mental impairment varies depending upon the timing of panic attacks, mood swings, seasonal affective disorder, nervous breakdown, intermittent episodes of lethargy and fatigue that respond to adjustments of medication, and life stressors causing exacerbation of symptoms, including harassment by her ex-husband regarding child support, stress of court regarding child support hearings, eventual loss of custody and visitation of her children, and threats of suicide in anticipation of denial of Social Security disability benefits (AR, pp. 16 and 21). Dr. Kelley's completion of the Psychiatric Review Technique form purports to be only an assessment of the severity of the plaintiff's condition in October of 2005.  This does not satisfy the duration requirement.

3. Dr. Kelley's completion of the assessment form is inherently suspect because Dr. Kelley checked boxes on the portion of the form pertaining to severity of an organic mental disorder, despite the absence of any evidence of an organic mental disorder (AR, p. 295).

The magistrate judge concludes that the ALJ was not required to give controlling weight to Dr. Kelley's completion of the Psychiatric Review Technique form because it did not constitute a medical opinion as contemplated by the regulations, it did not satisfy the duration requirement, and it was inherently suspect because it indicated the presence of an organic mental disorder despite no supporting clinical evidence.

Alternatively, Dr. Kelley's opinion is entitled to controlling weight only if it satisfies a two-pronged test, to-wit, it is "[1] well-supported by medically acceptable clinical and laboratory diagnostic techniques and [2] is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2). In arguing that the first prong of the foregoing test is satisfied, the plaintiff relies heavily upon raw GAF (global assessment of functioning) scores assigned by Dr. Kelley. GAF scores are deemed to be subjective and have little bearing on the individual's ability to function in an occupational context. ALJ's need not put "stock" in them. See *DeBoard v. Commissioner*, 2006 WL 3690637 and *Kornecky v. Commissioner*, 2006 WL 305648. Furthermore, as in *Cottrell v. Secretary*, 1990 WL 70913 (6th Cir.) (copy appended to Docket Entry No. 11), the Commissioner is not required to accept a psychiatrist's conclusion that a claimant's impairment satisfies the severity criteria of Listing § 12.04 based upon how the psychiatrist checked boxes on a form with no supporting clinical basis and proper medical documentation. With respect to the second prong of the test, the ALJ found that the plaintiff visits private clubs, restaurants, friends, and relatives, shops at the grocery store daily, does the housework, and prepares some meals (AR, p.18). The magistrate judge concludes that the ALJ did not err in declining to give controlling weight to Dr. Kelley's disabling assessment and instead relying upon the assessment of the state agency program psychologist, Dr. Thompson.

7

The plaintiff's final contention relates to the ALJ's consideration of her past and/or ongoing drug addiction and alcoholism. The magistrate judge acknowledges that the ALJ's written decision is confusing because, despite his failure to acknowledge the presence of a "severe" substance addiction disorder at the second step of the sequential evaluation process, he subsequently stated that "[p]ursuant to 20 CFR 404.1535, the undersigned finds the claimant's drug addiction and alcoholism to be contributing factors material to the determination of disability" (AR, p. 20). Following the Contract with America Advance Act of 1996, the phrase "contributing factor material to the Commissioner's determination that the individual is disabled" has come to be understood as a term of art meaning that the claimant is, in fact, disabled by her impairments as a whole, including ongoing substance abuse; however, discounting the effects of any ongoing substance abuse, she is not disabled. See 42 U.S.C. § 423(d)(2)(C) and 20 C.F.R. § 404.1535(b).

The plaintiff's position is that the ALJ's suggestion that she suffers from ongoing substance abuse is erroneous because Dr. Kelley specifically found insufficient evidence to substantiate the presence of a substance addiction disorder (AR, p. 302) and because the state agency program psychologist, Mary Thompson, Ph.D., found that her prior meth use did not precisely satisfy the diagnostic criteria of a substance addiction disorder (AR, p. 278) (Docket Entry No. 10, p. 5). The magistrate judge concludes that in light of the plaintiff's own position, any error was harmless because there was no ongoing substance abuse to consider. Alternatively, any error was harmless because the ALJ adopted Dr. Thompson's opinion, which was predicated upon some degree of substance abuse that did not precisely fit the criteria of a substance addiction disorder

8

but did not require a finding of disability (AR, p. 20). See *Fastner v. Commissioner*, 324 F.3d 981 (8th Cir., 2003) (an ALJ's consideration of whether a claimant's drug addiction and alcoholism is contributing factors material to the determination of disability is "superfluous" where there is no indication that the "sum of that individual's impairments would otherwise amount to a finding of disability").

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).